IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS KING,                )<br>             Plaintiff     )<br>                                       )<br>vs.                                 )<br>                                       )<br>WASHINGTON COUNTY;                                )<br>WASHINGTON COUNTY                                   )<br>CORRECTIONAL FACILITY; WARDEN  )<br>JOSEPH PELZER, individually and in his    )<br>capacity as Warden of the Washington       )<br>County Correctional Facility; CAPTAIN     )<br>OCHKIE; CAPTAIN WAUGH; CAPTAIN  )<br>CAMPBELL, individually and in their          )<br>capacity as Officers with the Washington   )<br>County Correctional Facility; OFFICER      )<br>CAIN; OFFICER NEWMAN; OFFICER          )<br>WINTERS, individually and in their            )<br>capacity as Correction Officers with the    )<br>Washington County Correctional Facility, )<br>                            Defendants    ) | Civil Action No. 07-697<br>Chief Magistrate Judge Amy Reynolds Hay |

**AMENDED FINDINGS AND CONCLUSIONS OF THE COURT**

HAY, Chief Magistrate Judge

      The Plaintiff, Thomas King ("King"), initiated this civil rights action pursuant to 42 U.S.C. § 1983.[1] The matter is based on events alleged to have occurred during King's confinement in the Washington County Corrections Facility ("the Jail") in November 2004. Following dismissal of a number of claims and defendants pursuant to stipulation, see Doc. 42, the remaining Section 1983 claim and two state law claims against Defendants Ochkie, Waugh,

---

      [1]Plaintiff originally filed suit in the Court of Common Pleas of Washington County and Defendants removed the action to federal district court. (Doc. 1).

Campbell, Cain, Newman, and Winters remained. The Plaintiff presented his case to the Court on July 6 and 7, 2009.[2] At the close of the Plaintiff's case, the Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The Court treats the motion as one made pursuant to Fed. R. Civ. P. 52(c), "which parallels ... Rule 50(a), but is applicable to non-jury trials." Rule 52 advisory notes. Having considered the testimony and exhibits comprising the Plaintiff's case, the Court finds that the Plaintiff has failed to show by a preponderance of the evidence that the Defendant used excessive force against him, and has also failed to establish by a preponderance of the evidence that any action on the part of the Defendants caused the harms alleged. As a result, the Court will grant the Defendants' Motion. In support of that ruling, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. At Count I of the Complaint, King, pursuant to 42 U.S.C. § 1983, asserts a claim that while he was an inmate at the Jail, the Defendants, Waugh, Cain, Newman, Campbell, Ochkie, and Winters, all corrections officers at the Jail, exercised excessive force against him in violation of his rights under the Fourth, Fourteenth and Eighth Amendments to the United States Constitution.

2. At Count II, King asserts state law claims for assault and battery.

3. King contends that the Defendants' use of force was motivated by the officers' desire to punish him for an altercation in which King assaulted another corrections officer.

---

[2] In accordance with the provisions of 28 U.S.C. s. 636 (c) and Fed. R. Civ. P. 73, the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment. (Doc. 6). On June 30, 2008, the parties agreed to proceed to a bench trial. (Doc. 41).

4.  The evidence shows that on November 26, 2004, King, after some twelve hours of drinking with a friend, learned that a woman he had been seeing was in a bar behaving provocatively with other men.  On his way to that bar, the Plaintiff encountered Jail corrections officers Michael King and James Embler on the sidewalk in Washington, Pennsylvania, while they were in the process of making a daily bank deposit.  King knew these officers from having spent time in the Jail for various offenses.  He testified that he tried to walk around the officers, but that they repeatedly placed themselves in his path.  In his deposition testimony, the Plaintiff stated that Officer Embler stepped on his shoe, and the Plaintiff, intimidated by that action, struck Embler in order to defend himself.  The Plaintiff's testimony in Court was somewhat different.  There, King stated that when he came face to face with the officers, Officer Embler said something like, "Doesn't it suck that you can't hit me because I'm a police officer?"  King then struck Embler and attempted to flee.  Officer King began to spray mace on the Plaintiff, and Officer Embler caught him by the leg.  The Plaintiff dragged Embler into the street.  According to King, he was then maced in the face, at which point he stopped struggling, and was shackled and cuffed.  The Washington City Police arrived, placed the Plaintiff in the back of the police car, and transported him to the City Jail where he was placed in a holding cell.

5.  EMTs were called to examine the Plaintiff's eyes, but did not indicate that King needed treatment beyond continuing to flush the mace out of his eyes with water.

6.  In the Affidavit of Probable Cause prepared following King's arrest, Washington City Police Officer, Corporal David H. Bradley, wrote:

> On 11-26-04 at approximately 2040 hrs the Defendant
> Thomas King Jr. approached 2 correction officers namely
> Cpt. Michael King and Ofc. James Embler who were on

3

> Main Street at Cherry Ave after making a nightly deposit and began a physical fight. Thomas D. King Jr. first shoved Embler and began to take punches at the officers before being taken to the ground. While on the ground Embler was hit in the left eye by Thomas D. King causing it to swell.
>
> Embler was treated at Washington Hospital for his injuries and Michael King was treated at the County Jail infirmary.

Ex. 2c.

7.  King was then transported to his Preliminary Arraignment, which occurred at 12:15 a.m. on November 27, 2004. Ex. 2d. Plaintiff was charged with, inter alia, Aggravated Assault. Following the arraignment, King was taken by Corporal Bradley directly to the desk in the processing area of the Jail. Defendants Cain, Newman, Bradley, Waugh, and a new desk sergeant were in the processing area. Defendants Newman and Waugh were behind the desk.

8.  King testified that after Corporal Bradley left the Jail, one of the Defendants stated, "You put your hands on one of ours; now you'll pay." King stated that Defendant Cain, who was behind King, slammed King's head against the counter a couple of times. King testified that he turned his head so that the impact with the desk was on the right side of his face.

9.  King then testified that he was pulled by his shackles into the "green room," a cell intended for those at risk of suicide. The Jail records indicate that upon arrival in the processing area King threatened to commit suicide. Ex. 1.a-2 and 1.a-3.

10. The "green room" did not have furniture or toilet facilities. It did have a grated drain in the floor. The front wall of this cell was made of glass and faced the intake desk, providing a full view of anyone in the cell.

11. King's testimony was that during the next 26 hours he was subjected to the following

actions by the Defendants:

 a. Cain smacked King in the back of his head several times and slapped his face every now and then.

 b. Waugh grabbed King's shackles and while he was prone in the cell forced his feet upward until they touched his back.

 c. Newman kneed or kicked him in the ribs 15-20 times.

 d. Ochkie kicked him 1-2 times in his right ribs.

 e. Winters kicked him 1-2 times in his left ribs.  Winters also told King to lie with his face over the drain.  King stated that every time he fell asleep the drain was flushed from a control outside the cell causing water to be splashed on his face.

 f. Campbell struck King across the right side of his face while wearing leather gloves.  King "felt something crack" but did not know what.

12. These attacks reportedly occurred over the course of several shift changes.  King stated that at one point during the attacks, Cain said, "We stick together."

13. According to King's testimony, Waugh told the other officers to remove King's clothes.  King stated that he was then left naked in the green room and ordered to lie on the floor with his arms spread.  He was told not to move otherwise.  He stated he was left in this position without food and without access to a toilet and medical care.

14. On December 3, 2004, King was transferred to the County Prison in Greene County, Pennsylvania.

15. The Court is cognizant of the fact that judgment as a matter of law is rarely granted, but finds that this matter presents a textbook case, illustrating when the grant of a motion made

pursuant to Fed. R. Civ. P. 52(c) is appropriate.  Resolution of this matter rests entirely on the credibility of Mr. King.  The two other witnesses called by him, Constable Croupe, who transported King for a preliminary hearing, and J. Albert Spence, the district justice before whom the preliminary hearing was ultimately held, contributed little to King's case.  Although Constable Croupe testified that he had observed scratches and bruises on the Plaintiff some days after the alleged beating, he was unaware of the circumstances surrounding Kings's arrest, and could not say whether the injuries that he observed were sustained at the Jail or during the assault on Officer Embler.  District justice Spence, who was subpoenaed to testify regarding his observation of King, did not remember the Plaintiff and could not say anything about his injuries.

16.     After observing King on the stand, assessing his demeanor on cross-examination, and carefully reviewing the exhibits against the background of his testimony, the Court concludes that King's account of his abuse at the hands of the Defendants is wholly incredible.  His testimony was riddled with major contradictions, and did not square with information set out in his medical records, his deposition testimony, the prison log book, or the photographs taken when he was transferred to the Greene County facility.  When confronted with information that did not jibe with his testimony at trial, the Plaintiff was unable to explain the contradictions, except to say that his medical records and the Jail's other records had been altered to hide the beatings.  In order to credit the Plaintiff's testimony, the Court would have to posit an expansive and well-coordinated conspiracy involving at least a dozen officers at the Jail, and the medical staff - both at the Jail and at the Greene County facility.

17.     The contradictions in King's testimony were anything but trivial.  For example, in his deposition testimony King stated that he refused medical care at the Jail.  At trial, he testified that

he continuously asked for but was denied treatment.  At his deposition, he testified that he was drunk on November 26th.  Six days after his arrest, when King spoke to Captain Straun, King reported that he was so drunk on November 26th that he did not know why he was even in jail.  At trial, King testified that he had engaged in heavy drinking on the 26th, but that this did not impair his judgment or his ability to remember what occurred when he was in the green room at the Jail.  Heavy drinking did not impair him as it might other people.  He could drink a fifth of vodka and still drive a car in a straight line.  At his deposition, King stated that he had not been seen by medical personnel at the Green County facility.  Medical records showed otherwise, and reflected that King did not register medical complaints or pain when he was evaluated there on December 3, 2004.  At his deposition, King stated that one of the Defendants opened a wound on his chin with while wearing a black glove.  At trial, King testified that his chin was not injured in the beating, and that the scar that he had there was the result of a childhood injury.  Although it would be possible to detail myriad discrepancies in King's testimony, the Court is satisfied that the record speaks for itself and fully reflects the basis for the Court's credibility determination.

18.     In making this determination the Court recognizes that King suffered bodily injury at some point between the time of his encounter with Officers King and Embler on November 26, 2004 and the date of his transfer to Greene County on December 3, 2004.  The photographs taken upon intake at the Greene County Prison show as much.  They do not, however, show the degree of trauma that one would expect to find on a person recently subjected to repeated beatings.  What is critical is the fact that the record fails altogether to establish that King's injuries occurred while he was an inmate at the Jail.  The Court finds it equally likely that King was injured during the violent encounter between King and the corrections officers on the street.  The record makes

clear that this encounter was no mere dust-up. Officer Embler emerged from the altercation bloody, with his clothing torn and missing buttons. He suffered an eye injury and was treated at a local hospital. Officer King was also injured, although not as seriously. The sentence that King received for his assault on Officer Embler reflects the severity of the crime; he served the full thirty six months of an eighteen to thirty six month sentence imposed after pleading no contest. The Plaintiff's testimony that he simply lay inert on the ground after striking Embler and was not injured is simply not credible.

## CONCLUSIONS OF LAW

<u>The Rule 52(c) Motion</u>

1.      Federal Rule of Civil Procedure 52(c) replaced the portion of Rule 41(b) which "formally authorized a dismissal at the end of the plaintiff's case if [he] has failed to carry an essential burden of proof." Fed R. Civ P. 52(c) advisory notes. Under the former Rule this was known as a voluntary dismissal. Rule 52(c) "became the procedural successor to involuntary dismissal. In ruling on a Motion made under Rule 52(c), the Court is to apply the legal standard that governed motions made under former rule. See <u>Gannon v. United States</u>, 571 F. Supp 2d 615 , 617 ( E.D. Pa. 2007) (collecting cases). Under that standard

> the court is not as limited in its evaluation of the nonmovant's case as it would be on a motion for a directed verdict. The trial judge is not to draw any special inferences in the nonmovant's favor nor concern itself with whether the nonmovant has made out a prima facie case. Instead the court's task is to weigh evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.

<u>Giant Eagle v. Fed. Ins. Co.</u>, 884 F. Supp. 979, 982 (W.D. Pa. 1995). Under Rule 52(c), "the

district court can resolve disputed factual questions." See Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 400 (3d Cir. 1999).

The Section 1983 Claims

2.      Because of its findings of fact, the Court's discussion of the law governing King's claims is brief.  In order to state a claim under 42 U.S.C. § 1983

> a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendants which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F. Supp.2d 608, 613 (E.D. Pa. 2003) (citations omitted).  The Plaintiff bears the burden of proof and persuasion with respect to each element of a Section 1983 claim. See, e.g., Groman v. Twp. Of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  There is no dispute that each of the Defendants was a state actor at all relevant times.  The focus, therefore, is on whether any of these Defendants violated King's constitutional rights.

King alleges that his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution were violated by the Defendants' use of excessive force.  In their Answer, the Defendants denied that force was used on King during his incarceration.  At trial, Defendants challenged Plaintiff's version of events.

Put simply, the Court has found the evidence adduced by the Plaintiff is entirely insufficient to establish that the injuries alleged were the result of the Defendants' conduct and were not suffered instead during the altercation that resulted in his arrest.  On the evidence presented, the Court cannot find that the Defendants violated King's constitutional rights.

9

Furthermore, the evidence adduced during the Plaintiff's case at trial will not support a finding of causation. The Court is left to speculate as to the ultimate issues in this case - whether the Defendants used force on King.[3] Because King has failed to establish that he suffered a violation of his rights under the Fourth, Eighth or Fourteenth Amendments, it is not necessary to discuss the law governing claims.

## CONCLUSION

For the reasons set out above, the Defendants' motion made pursuant to Rule 52(c) will be granted. An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 15 September, 2009

cc:   Counsel of record via CM-ECF

---

[3] The lack of causation is also fatal to King's state law claims.